IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

|  |  |
|---|---|
| IN RE | ) )  |
| LJH ENTERPRISES, | ) CASE NO. 10-34355-H3-11 )  |
| Debtor, | ) ) ) |

### MEMORANDUM OPINION

The court has held a hearing on the "Motion to Dismiss Bankruptcy Case Pursuant to 11 U.S.C. § 1112(b)" (Docket No. 80) filed by Bank of America, N.A., successor by merger to LaSalle Bank National Association, as Trustee for the Registered Holders of Heller Financial Commercial Mortgage Asset Corp., Commercial Mortgage Pass-Through Certificates Series 2000 PH-1, through its special servicer, CWCapital Asset Management LLC ("CWCAM"). The following are the Findings of Fact and Conclusions of Law of the court. A separate Judgment will be entered granting the motion. To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

### Findings of Fact

LJH Enterprises ("Debtor") filed a voluntary petition under Chapter 11 of the Bankruptcy Code on May 27, 2010.

1

Debtor is a single asset real estate debtor. It scheduled as its primary asset a 64 unit apartment complex located in Houston, Texas. (Docket No. 9).

Horace Colbert, Debtor's sole shareholder, testified that Debtor acquired the property in 1999. He testified that he and his wife are Debtor's sole employees.

On July 2, 1999, Debtor executed a promissory note, in the original principal amount of $1.4 million, payable to Mitchell Mortgage Co., LLC, the predecessor in interest to CWCAM. The note provided for monthly payments of $10,665.73, and a ten year maturity. (CWCAM Exhibit 1).[1] On June 15, 2010, CWCAM filed a notice of perfection pursuant to Section 546(b) of the Bankruptcy Code, asserting, inter alia, that it is owed $1,419,152, secured by the property. (CWCAM Exhibit 6).

In Debtor's schedules, Debtor lists a total of two secured creditors, CWCAM, and Richard Pickard. (Docket No. 9). Debtor lists a total of two unsecured creditors, Pickard, and Theodore Andrews.

Colbert testified that Debtor previously had agreed to sell the property to Pickard. He testified that, after Debtor terminated the sale agreement, asserting a breach by Pickard, Pickard sued for specific performance. He testified that Pickard

---

[1] The court notes that the monthly payments are insufficient to fully amortize the debt over a period of ten years. The monthly payment provided for in the note appears to be based on a 30 year amortization.

obtained a judgment against Debtor.  He testified that Theodore Andrews was Debtor's attorney in litigation against Pickard. Debtor scheduled Andrews' claim in the amount of $18,000. Andrews has not filed a proof of claim.[2]

Pickard has filed a proof of claim, in the amount of $179,948.79.  CWCAM has filed a proof of claim.  In addition, GE Money Bank has filed a proof of claim, in the amount of $4,178.20.  Colbert testified that GE Money Bank's claim relates to a revolving charge account Debtor has used to purchase materials for the property.

CWCAM has filed notices of assignment, indicating it has acquired the claims filed by Pickard and GE Money Bank. (Docket Nos. 68, 69).  Thus, the only remaining filed claim not held by CWCAM is that of Andrews.

Debtor has filed a plan in the above captioned Chapter 11 case.  Debtor's first amended plan, which was filed on January 27, 2011, four days before the hearing on the instant motion, provides with respect to CWCAM's claim that Debtor will execute a new note payable to CWCAM's debt for 36 months, based on a 20 year amortization, reducing the interest rate from 8.4 percent to 6 percent, and reducing the monthly payment from $10,665.73 to

---

[2] Debtor asserts that the note contains restrictive terms which inhibited Debtor's ability to sell the property, and caused the failure of Debtor's attempt to sell the property to Pickard. That consideration is not relevant to the question of whether Debtor will be able to obtain refinancing in the present market.

$9,313.60, with a balloon payment due at the end of the 36 months.  With respect to Pickard's claim, now owned by CWCAM, the plan provides that Debtor will pay $1,289.58 per month for 36 months, with a balloon payment (apparently based on a 20 year amortization) due at the end of the 36 months.  With respect to unsecured claims, the plan separately classifies the GE Money Bank claim now held by CWCAM from Andrews' claim.  The plan provides that $600 will be paid, pro rata, on the two unsecured claims, over 36 months.

In the instant motion, CWCAM seeks dismissal, for cause, based on what it asserts are a substantial or continuing loss to or diminution of the estate and an absence of a reasonable likelihood of reorganization, and Debtor' lack of good faith in filing the instant case.

Colbert testified that Debtor has sought to refinance CWCAM's loan.  He testified that conditions in the credit market have made it such that lenders were unwilling to lend for longer than one year, or on a value of more than 50 percent of the property value, or for interest rates of less than 15 percent.

Colbert testified on cross-examination that Debtor will need to obtain a refinancing commitment in order to make the payments called for under the plan.  He testified that he has sought such a refinancing commitment, without success, since the petition date in the instant case.  He testified that Debtor has

no current refinancing commitment from any other entity, does not have an earnest money contract or letter of intent for purchase of the property, and does not anticipate capital infusion from Colbert or any other outside source.

## Conclusions of Law

Section 1112(b) of the Code governs conversion or dismissal of Chapter 11 cases. Section 1112(b) provides in pertinent part:

> (b)(1) Except as provided in paragraph (2) of this subsection, subsection (c) of this section, and section 1104(a)(3), on request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause.
>
> (2) The relief provided in paragraph (1) shall not be granted absent unusual circumstances specifically identified by the court that establish that such relief is not in the best interests of creditors and the estate, if the debtor or another party in interest objects and establishes that--
>
>> (A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and
>>
>> (B) the grounds for granting such relief include an act or omission of the debtor other than under paragraph (4)(A)--
>>
>>> (i) for which there exists a reasonable justification for the act or omission; and
>>> (ii) that will be cured within a reasonable period

of time fixed by the court.

(3) The court shall commence the hearing on a motion under this subsection not later than 30 days after filing of the motion, and shall decide the motion not later than 15 days after commencement of such hearing, unless the movant expressly consents to a continuance for a specific period of time or compelling circumstances prevent the court from meeting the time limits established by this paragraph.

(4) For purposes of this subsection, the term 'cause' includes--

   (A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;
   (B) gross mismanagement of the estate;
   (C) failure to maintain appropriate insurance that poses a risk to the estate or to the public;
   (D) unauthorized use of cash collateral substantially harmful to 1 or more creditors;
   (E) failure to comply with an order of the court;
   (F) unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter;
   (G) failure to attend the meeting of creditors convened under section 341(a) or an examination ordered under rule 2004 of the Federal Rules of Bankruptcy Procedure without good cause shown by the debtor;
   (H) failure timely to provide information or attend meetings reasonably requested by the United States trustee (or the bankruptcy administrator, if any);
   (I) failure timely to pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief;
   (J) failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court;
   (K) failure to pay any fees or charges required under chapter 123 of title 28;
   (L) revocation of an order of confirmation under section 1144;
   (M) inability to effectuate substantial consummation of a confirmed plan;
   (N) material default by the debtor with respect to a confirmed plan;

> (O) termination of a confirmed plan by reason of the occurrence of a condition specified in the plan; and
>
> (P) failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition.

11 U.S.C. § 1112(b).

The Section 1112(b)(4) list of items identified as constituting cause for conversion or dismissal is non-exclusive. See In re Global Ship Systems, LLC, 391 B.R. 193 (Bankr. S.D. Ga. 2007); In re The 1031 Tax Group, LLC, 374 B.R 78 (Bankr. S.D.N.Y. 2007).

Courts consider the totality of the circumstances in determining whether there is cause for dismissal. Matter of Atlas Supply Corp., 857 F.2d 1061 (5th Cir. 1988). This court has generally found cause to dismiss cases in which it appeared that the debtor was attempting to use the provisions of the Bankruptcy Code to gain an unfair advantage in a two party dispute. See e.g., In re Starmark Clinics, LP, 388 B.R. 729 (Bankr. S.D. Tex. 2008).

The Fifth Circuit has identified the absence of good faith where the debtor's business was "mowing the grass and waiting for market conditions to turn." In re Humble Place Joint Venture, 936 F.2d 814 (5th Cir. 1991).

In the instant case, Debtor's reorganization depends entirely on a change in market conditions. Debtor is unable to

refinance the CWCAM note on terms it finds acceptable, despite eight months of searching for a lender to refinance the note. Debtor's only articulated justification for extending the time to refinance for an additional three years is that he believes lenders will change their lending practices in the future. Debtor's only employees are Colbert and his wife.  All of Debtor's debts, except one owed to an attorney who represented Debtor in litigation against a creditor, are now held by CWCAM. Colbert's testimony was credible and competent, but the aim of Debtor's proposed plan of reorganization objectively is not in good faith.  The court concludes that the instant case should be dismissed.

      Based on the foregoing, a separate Judgment will be entered dismissing the above captioned Chapter 11 case.

      Signed at Houston, Texas on February 11, 2011.

_____
LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE